# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>**DENNIS M. BARTEL,**<br><br>       **Debtor**<br>_____<br><br>**DENNIS M. BARTEL,**<br><br>       **Plaintiff**<br><br>v.<br><br>**PAUL F. WALSH, JR.,** as District Attorney for Bristol County, Massachusetts,<br>**STEPHEN M. O'REILLY,**<br>**LARRY BERGHAUS,**<br>**JOSE RODRIGUEZ,** and<br>**ISABELLE RODRIGUEZ**<br><br>       **Defendants** | Chapter 7<br>Case No. 05-13134-JR<br><br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 06-1161 |

## MEMORANDUM OF DECISION ON
## STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By his complaint in this adversary proceeding, chapter 7 debtor Dennis Bartel seeks damages and injunctive relief against (among others) Paul F. Walsh, Jr., as he is district attorney of Bristol County, Massachusetts, and Stephen M. O'Reilly, a lieutenant in the Massachusetts State Police (together, the "State Defendants"), for instituting criminal proceedings against him and seizing his financial records, allegedly in an effort to compel him to pay debts and thereby to deprive him of the protection of the bankruptcy laws, especially the automatic stay, to which he was then entitled.[1] He asserts counts for violation of the Federal Civil Rights Act, 42 U.S.C. §

---

[1] The complaint also seeks relief against defendants Larry Berghaus and Jose and Isabel Rodriguez. On October 4, 2006, the court (by Judge Somma) dismissed the claims against Larry Berghaus for failure to state a claim on which relief could be granted. Defendants Jose and Isabel Rodriguez have not answered or otherwise responded to the complaint.

1983, the Massachusetts Civil Rights Act, G.L. c. 12, § 11A, and the automatic stay,11 U.S.C. § 362(a), and for abuse of process.  The adversary proceeding is now before the court on the motion of defendants Walsh and O'Reilly for summary judgment.  Bartel opposes the motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Before he filed for bankruptcy relief, Dennis Bartel, made his living as a home construction contractor, at least in part though his company, New Dimensions.  He filed a petition for relief under chapter 13 of the Bankruptcy Code on April 13, 2005 and later converted his case to one under chapter 11.  On February 24, 2006, he filed the complaint in this adversary proceeding.

In the complaint he makes the following allegations of fact:  On February 22, 2006, while Bartel remained a debtor-in-possession under chapter 11, Lieutenant Stephen O'Reilly appeared at Bartel's home to execute a search warrant.  O'Reilly identified himself as a lieutenant in the Massachusetts State Police and stated that he was associated with the Bristol County district attorney's office.  Defendant Paul F. Walsh Jr. was district attorney for Bristol County at the time.[2]  O'Reilly served Bartel with a search warrant and proceeded to seize all Bartel's books and records.  While doing so, he told Bartel that the attorney general of the Commonwealth of Massachusetts was aware of Bartel's bankruptcy filing and had "placed a block" on the case and that Bartel was not going to be allowed to go forward with the case.  Also while executing the search warrant, O'Reilly asked Bartel, "what did you do with Berghaus's money?"  Bartel understood the question to refer to Larry Berghaus, who was a client of New Dimensions and a

---

[2] Walsh is no longer the district attorney for Bristol County.  Bartel has not amended the complaint to name the current district attorney as a defendant.

state police officer.

The next day, Bartel's attorney received a call from an attorney James Rudser, who stated that he was an attorney for Jose and Isabel Rodriguez and represented them in state court actions against Bartel and New Dimensions. The Rodriguezes had filed a proof of claim in the bankruptcy case. Rudser told Bartel's attorney that he (Rudser) was the source of the actions taken by Lieutenant O'Reilly, that such actions were only the beginning of the troubles that Bartel was going to suffer, and that he had Lieutenant O'Reilly on his "speed dial." Attorney Rudser also inquired whether Bartel was willing to provide him with an affidavit that he could use in the state court proceeding, in exchange for which he would arrange for Lieutenant O'Reilly's investigation to cease, and he (Rudser) would withdraw the claim filed on behalf of the Rodriguezes.

In the complaint Bartel further alleges that Walsh and O'Reilly took these actions under color of law, in exercise of the authority of the Commonwealth of Massachusetts and with knowledge that Bartel was a debtor in a bankruptcy case. The actions were intended to deprive Bartel of the rights and privileges afforded to Bartel under the Bankruptcy Code, including the automatic stay, and were not related to any legitimate exercise of police power or any legitimate criminal matter. Rather, these actions were designed and intended to harass and intimidate Bartel and to compel him to pay a debt through the unlawful use of criminal process. O'Reilly's seizure of Bartel's financial records made it impossible for Bartel to prosecute his bankruptcy case, to make payments to creditors, and to fully assist his counsel in preparing the necessary pleadings and papers. As a result of these actions, Bartel has been deprived of or denied relief available under the Bankruptcy Code. (The complaint does not specify the relief so denied.)

Upon filing the complaint, Bartel also moved for a preliminary injunction that would

have required the state defendants to return his books and records and enjoined them from commencing or continuing any criminal prosecution against him. After repeated continuances of the hearing on the motion for preliminary injunction, Bartel and Walsh entered into a stipulation, which this court approved. The stipulation provided that Walsh would complete his examination of the books and records and other personal property seized by Lieutenant O'Reilly pursuant to a search warrant, and copy the same, no later than November 7, 2006, whereupon the materials would be returned to Bartel via the attorney who was representing him in a criminal indictment that by then the Commonwealth had filed against him. Bartel's counsel stated that the stipulation rendered moot the motion for preliminary injunction, and the court treated the motion accordingly.

In March, 2006, a Bristol County grand jury returned an indictment against Bartel, charging him with multiple counts of "Larceny Over $250." In October 2007, a jury convicted Bartel of seven such counts. Judge Kane of the Massachusetts Superior Court, who presided over the criminal trial, sentenced Bartel to seven and one-half years in state prison. The sentencing order imposes three consecutive terms of 30 months, each such term reduced to 16 months to serve, with probation to commence upon release and to contain the special condition of restitution. In support of this order, Judge Kane issued an eleven-page sentencing memorandum, dated December 6, 2007.[3] The sentencing memorandum and order do not quantify the restitution obligation; this will be the subject of further proceedings.

On July 14, 2008, defendants Walsh and O'Reilly filed the present motion for summary judgment. In support of the motion, the defendants submitted only the sentencing memorandum and the deposition testimony of Dennis Bartel. Though neither is authenticated, Bartel does not

---

[3] The sentencing order appears as the last two pages of the sentencing memorandum.

4

dispute that these documents are what they purport to be. Bartel submitted no evidence in conjunction with his opposition to the motion.

Creditors and the Commonwealth of Massachusetts, acting through its attorney general, have filed complaints objecting to discharge in at least two adversary proceedings in this case. The Commonwealth also seeks a determination that the debts of Bartel to certain (unspecified) consumer creditors are excepted from discharge under § 523(a)(2) and (6). In addition, at least three other consumer creditors have filed complaints seeking determinations that their claims against Bartel are excepted from discharge. These complaints remain pending; therefore, it is not yet clear whether Bartel will receive a discharge in this case or, if he does, whether it will encompass some or all of the debts that he contends the state criminal proceedings were intended to enforce.

**ARGUMENTS OF THE PARTIES**

The defendants' principal argument in support of summary judgment is that the automatic stay does not apply to the actions on which the complaint is predicated, all of which were part of a criminal prosecution.[4] Subsection 362(b)(1) of the Bankruptcy Code specifically excludes "the commencement of continuation of a criminal action or proceeding against the debtor" from the scope of matters stayed by § 362(a), the so-called automatic stay. This exclusion has no exceptions, the defendants argue, even if the purpose or motive behind the prosecution is to collect a debt. In addition, they argue, their actions are also shielded by

---

[4] The defendants maintain that this argument undercuts not only the count for violation of the automatic stay but also the three remaining counts, and the court agrees. The defendants make additional arguments in support of summary judgment, which arguments the court need not reach or recite.

subsection 362(b)(4), which further excludes from the automatic stay "an action or proceeding by a governmental unit . . . to enforce [its] police and regulatory power."

In response, Bartel makes three arguments. First, he argues that the exclusions of criminal prosecutions and police power actions are not absolute; rather, in determining their applicability, the courts must focus on the motive of the state and the result of the prosecution. Where the state actors are motivated by desire to collect a debt, they are abusing their power, and their actions are a violation of the stay. Bartel argues that there exists evidence from which the court could find that, by seizing his records and criminally prosecuting him, the defendants were attempting to collect a debt. The evidence is in two parts: (1) the Commonwealth has filed a complaint in this bankruptcy case in which it objects to his discharge and seeks to establish that Bartel's debts to certain of his customers are excepted from discharge; and (2) Judge Kane, in his sentencing memorandum, indicated that his purpose in fashioning a sentence was to find a way to force Bartel to repay his victims or to punish him for not doing so.

Second, Bartel argues that the scope of the criminal and police power exclusions should be construed such that the automatic stay protects debtors in bankruptcy from criminal prosecutions that are but veiled debt-collection devices that would not survive scrutiny under the Thirteenth Amendment and 42 U.S.C. § 1994. Bartel argues that the prosecution of an individual to enforce collection of debt is a form of peonage and as such a form of involuntary servitude within the meaning of the Thirteenth Amendment, and that 42 U.S.C. § 1994, enacted to implement the Thirteenth Amendment, nullifies any state law resulting in peonage and prohibits the use of criminal laws, including debtors' prisons, as debt-collection devices.

Third, Bartel argues that the exceptions did not permit state authorities to seize property

6

of the estate, as the defendants did when they seized his books and records.

**SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Where, as here, the moving party would not bear the burden of proof at trial, the movant's initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The burden then shifts to the opposing party to adduce such evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. at 322-323; *In re Varrasso*, 37 F.3d 760, 763 n.1 (1st Cir. 1994).

**DISCUSSION**

**a. The Scope of the Automatic Stay**

    **1. The Criminal Exception in Section 362(b)(1)**

The Debtor's principal count (as expanded in his motion for summary judgment[5]) is his

---

[5] At the commencement of this action, the criminal prosecution was at an early stage and had included only the seizure of his records. By the time of the motion for summary judgment, Bartel had also been indicted, tried, convicted, sentenced, and incarcerated. I understand his count for violation of the automatic stay to be based on all parts of the criminal prosecution, including those that transpired after the filing of the complaint.

7

claim that the prosecution of the criminal action—including the seizure of records, indictment, trial, conviction, sentencing, incarceration, and any future enforcement of the order requiring restitution—constitutes a violation of the automatic stay for which he is entitled to damages under 11 U.S.C. § 362(h)[6] and injunctive relief.  The premise of this count is that the exception from the automatic stay for criminal actions and proceedings, set forth in 11 U.S.C. § 362(b)(1), is an exception only for those criminal actions and proceedings that do not serve, and are not intended to serve, a debt-collection purpose.

This reading is directly contrary to the language of § 362(b)(1), which is categorical, excepting all criminal actions from the automatic stay.  For the reasons set forth below, the court concludes that the language of § 362(b)(1) is unambiguous and should be construed according to its plain meaning.

The so-called "automatic stay" is actually a collection of eight statutory stays set forth in paragraphs (1) through (8) of subsection 362(a).  11 U.S.C. § 362(a)(1)-(8).  It states that the filing of a petition in bankruptcy operates as a stay of, among other things, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case," § 362(a)(6), and "the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case," § 362(a)(1). Exceptions from the automatic stay are set forth in subsection (b).  Some exceptions pertain

---

[6] Bartel commenced his bankruptcy case before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Therefore, the case is governed by the Bankruptcy Code as it existed before its amendment by BAPCPA.  At that time, redress for violation of the stay was governed by subsection 362(h), which stated: "An individual injured by any willful violation of stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(h).

8

only to certain parts of the stay; for example, the police power exclusion in § 362(b)(4) applies only to those parts of the stay set forth in paragraphs (1), (2), (3), or (6),[7] and therefore a governmental authority operating under the police power exception is still bound by parts (4), (5), (7), and (8) of the automatic stay.  The criminal exception, however, applies to all parts of the stay.[8]  One acting within the scope of the criminal exception is not bound by any part of the stay.

The criminal exception states that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor."  11 U.S.C. § 362(b)(1).  The language of this exception is categorical and unambiguous.  It contains no express exception for those instances in which the criminal prosecution is motivated, in whole or in part, by intent to obtain restitution for the alleged victims or to compel payment of a debt.  It contains no express exception for prosecutorial bad faith, such as where a prosecutor uses criminal process without valid cause but solely as leverage to compel payment of a debt.  Nor does it contain an express exception for crimes of a financial nature, such as larceny or embezzlement, where the criminal sentence is perhaps more likely to involve a restitution component.  The language is thus categorical.

Nor may one surmise that this was a matter of legislative oversight.  The drafters

---

[7] "The filing of a petition under section 301 . . . of this title . . . does not operate as a stay—(1) *under paragraph (1), (2), (3), or (6) of subsection (a) of this section,* of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."  11 U.S.C. § 362(b)(4) (emphasis added).

[8] "The filing of a petition under section 301 . . . of this title . . . does not operate as a stay—(1) *under subsection (a) of this section,* of the commencement or continuation of a criminal action or proceeding against the debtor."  11 U.S.C. § 362(b)(1) (emphasis added).

expressly excluded the enforcement of money judgments from the scope of the police power exception, 11 U.S.C. § 362(b)(4) ("including the enforcement of a judgment *other than a money judgment*" (emphasis added)). Had they meant to exclude restitution and money judgments from the scope of the criminal exception, they would have employed similar language. In view of the fact that restitution, which is a form of debt repayment, is not an uncommon objective of criminal prosecution, courts construing the criminal exception must assume that the lack of exception for restitution and debt enforcement was deliberate. Moreover, the language is unambiguous. Bartel offers no explanation as to how subsection (b)(1) might reasonably be construed to contain any such exception.

It would be surprising to find in subsection (b)(1) an exception for those criminal proceedings that serve a debt-collection purpose. Absent subsection (b)(1), criminal proceedings would be subject to the parts of the automatic stay set forth in paragraphs (1) and (6) of § 362(a) only when and precisely because they were actions or proceedings to collect a debt. Therefore, in order for the (b)(1) exception to have any meaning or purpose at all, it must be construed to extend to criminal proceedings *notwithstanding* that they serve a debt-collection purpose. The construction that Bartel urges upon the court would remove criminal proceedings from the scope of the exception for the very same reason that they come within the scope of § 362(a) in the first place: that they are actions to collect a debt.[9] This construction would thus make of § 362(b)(1) a nullity. In order to give effect to the (b)(1) exception, as principles of statutory construction require, it must be construed to extend to those criminal proceedings that serve a debt-collection

---

[9] I do not mean that all criminal proceedings are actions to collect a debt. Many are not. I mean only that some are—such as where an order of restitution is sought—and that, but for the subsection (b)(1) exception, these would be subject to the automatic stay in § 362(a)(1) and (6) precisely because they are actions to collect a debt.

10

purpose.

Indeed, it is precisely those criminal proceedings that the exception appears to have been designed to address. Restitution is a common and legitimate aim of criminal prosecution. One might reasonably suppose that the exception was deemed necessary precisely because criminal prosecutions not infrequently serve a purpose, such as debt collection or debt enforcement, that, but for the exception, would be enjoined by one or more parts of the automatic stay.

Apart from the plain meaning of subsection (b)(1) and the need to construe it in a manner that gives it effect, there is a further reason to reject Bartel's interpretation: it would effectively require that the Bankruptcy Court act as a court of review for both federal and state criminal proceedings against debtors in bankruptcy, even to subject state prosecutors to Bankruptcy Court review of their prosecutorial motives. In order to find that Congress intended to set up a system with such implications for federalism and for the divide between the bankruptcy system and the state and federal criminal justice systems, one would require much clearer authorization than is contained in the plain language of subsection (b)(1), which is no authorization at all. *In re Gruntz*, 202 F.3d 1074, 1084-1086 (9th Cir. 2000). For all these reasons, this court construes subsection (b)(1) as admitting of no exceptions for prosecutorial purpose, bad faith, crimes of a financial nature, or punishments in the nature of restitution.[10]

---

[10] Bartel's argument from the Thirteenth Amendment and 42 U.S.C. § 1994 fails for the same reason: that the criminal exception is categorical. While these authorities may be useful defenses in a criminal prosecution that is nothing but an attempt to use criminal process to collect a debt, *see Taylor v. State of Georgia*, 315 U.S. 25, 62 S.Ct. 415 (1942), they do not expand the scope of the automatic stay or authorize the bankruptcy court to sit in review of state and federal criminal prosecutions. It is true that the automatic stay has in common with the Thirteenth Amendment and 42 U.S.C. § 1994 that all three are (at least to some extent) debtor protection laws; it does not follow that the automatic stay is a means of enforcing the others. They are separate protections. The automatic stay does not authorize the Bankruptcy Court to act as a court of review for prosecutions in violation of the Thirteenth Amendment and 42 U.S.C. § 1994. Moreover, as Bartel was prosecuted for larceny, his is not a case of prosecution

## 2. Does the Stay Apply to Seizure of Property of the Estate?

Citing *Stern v. Commonwealth of Massachusetts Alcohol Beverage Control Commission*, 183 B.R. 342 (Bankr. D. Mass. 1995), Bartel argues that notwithstanding the criminal action exception, state criminal prosecutors remain enjoined by § 362(a)(3) from seizing assets of the estate, and that the actions of defendants Walsh and O'Reilly in seizing his financial records violated this part of the stay. This argument has no merit. *Stern* involved the police power exception, codified in § 362(b)(4), not the criminal exception. The applicability of the police power exception was, at that time, expressly limited to paragraph (1) of subsection (a), and therefore governmental authorities operating within the scope of the police power exception remained bound by the stay of "any act to obtain possession of property of the estate" which is now set forth in subsection (a)(4) (but then appeared in subsection (a)(3)). The criminal exception is not so limited in scope; it expressly applies to all paragraphs of subsection (a), including the stay of acts to obtain possession of property of the estate in subsection (a)(4). Bartel argues that, because criminal prosecutions are an exercise of a governmental authority's police power, those prosecutions should be governed by the police power exception in (b)(4). I reject this argument as elevating the general above the specific. While it is true that a state's power of criminal prosecution is a subset of its police powers, it does not follow that the police power exception should govern. Rather, as the more specific of the two exceptions, the criminal action exception must be deemed to govern where the exercise of police power takes the form of a criminal prosecution.

---

for "simple debt." He contends that the elements that distinguish larceny from simple debt were presumed by the trier of fact, not proven against him, but he has not adduced the record of the criminal trial or the jury instructions given therein, and therefore he cannot carry his burden of proof on that issue.

For these reasons, I conclude that, on Bartel's count for violation of the automatic stay, there is no genuine issue of material fact, and defendants Walsh and O'Reilly are entitled to judgment as a matter of law.[11]

b. **The Remaining Counts**

In addition to his count for violation of the automatic stay, Bartel asserts counts for violation of state and federal civil rights laws and for abuse of process. Bartel has not fully articulated the theories behind these counts, but all three clearly are predicated on Bartel's contention that the automatic stay enjoined the defendants from criminally prosecuting him and from seizing his financial records during his bankruptcy case. The civil rights counts are based on a theory that the automatic stay entitles a debtor to be free of the hindrance of criminal prosecution while seeking relief in bankruptcy. The abuse of process count in based on the theory that the purpose for which the state defendants employed criminal process against him, to collect the debts arising from the larceny for which he was prosecuted, was an improper purpose; this in turn is based on the theory that the criminal exception to the automatic stay permits criminal prosecution only when that prosecution serves no debt collection purpose. Having held that the automatic stay affords no shelter from criminal prosecution, and that the criminal exception encompasses even those prosecutions that do and are intended to serve a debt

---

[11] The State Defendants moved earlier in this adversary proceeding to dismiss the complaint for failure to state a claim on which relief could be granted, relying principally on an argument similar to the one they now advance for summary judgment on the count for violation of the automatic stay. The court denied the motion, concluding that "it does not clearly appear that the Debtor cannot recover against Defendants Walsh and O'Reilly under any viable theory"; the brief order did not address the language of § 362(b)(1). After reviewing the more complete summary judgment record, and having examined the language of § 362(b)(1), the court now concludes that the State Defendants are entitled to judgment as a matter of law.

collection purpose, the Court holds that the state defendants are entitled to summary judgment on these three remaining counts as well.

### c. Conclusion

For the reasons set forth above, the Court will enter a separate order granting the motion of defendants Walsh and O'Reilly for summary judgment.

Date: October 10, 2008

*Joel B. Rosenthal*
Joel B. Rosenthal
United States Bankruptcy Judge